THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES FRANKLIN BASSETT, Defendant-Appellant.

Fourth District   No. 15771

Opinion filed May 13, 1980.

134

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Darryl Pratscher, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

On the snowy evening of January 7, 1979, Kevin Ryan, 21 years old, left his trailer to walk up the road to a service station for a pack of cigarettes.

Shortly thereafter, his body was found about 4 feet off the road. The lower part of his brain stem had been sheared, causing instant fatal brain hemorrhage.

Defendant Bassett was convicted by a jury of reckless homicide and was sentenced to an extended term of 6 years' imprisonment to be served

consecutively with a prior 5-year sentence for aggravated battery (see *People v. Bassett* (1980), 78 Ill. App. 3d 1202 (Rule 23 order), conviction affirmed by this court).

We affirm.

*First*, the defendant argues on appeal that reversible error occurred when the trial court failed to dismiss a juror who had read a newspaper article about the defendant's prior conviction and sentence for aggravated battery.

On the morning of the second day of trial, defendant's counsel informed the trial court that an article, which concerned the defendant's prior conviction for aggravated battery, had appeared in the previous evening's Champaign-Urbana News Gazette. The reported battery had occurred at the time that the defendant was arrested on the reckless homicide charge. Two of the jurors indicated that they had read the article. Both jurors were questioned individually by the trial court and counsel in chambers as to the extent of their contact with, and knowledge of, the article. One juror was dismissed when he informed the court that he could no longer be impartial.

A second juror, Edward Sideman, acknowledged that he was familiar with the article's contents. The following dialogue then took place between the prosecutor and the juror:

"PROSECUTOR: Would you be able to continue to be a fair and impartial juror in this case in light of that [the article]?

JUROR: I think so.

PROSECUTOR: Can you put that aside and not consider that when you are determining what the facts are in this case?

JUROR: I think so.

PROSECUTOR: You understand that this is totally unrelated—

JUROR: Uh-huh.

PROSECUTOR: —As far as your determination of what the facts are?

JUROR: Sure."

The court then warned Mr. Sideman not to speak of this matter to the other jurors.

The defendant asserts that two instances of error arose out of the preceding incident: (1) that Sideman should have been dismissed because his response to the court's inquiry was equivocal, and (2) that the court's questioning of the juror was insufficient to constitute a meaningful inquiry into his possible prejudice. Thus, according to the defendant, his motion for a mistrial based upon these grounds should have been granted.

■■ To warrant a reversal, it must reasonably appear that the jury, or any of the jurors, has been influenced or prejudiced to such an extent that it would not or could not be fair and impartial. (*People v. Malmenato*

(1958), 14 Ill. 2d 52, 150 N.E.2d 806, *cert. denied* (1958), 358 U.S. 899, 3 L. Ed. 2d 148, 79 S. Ct. 222.) We find that the dialogue with juror Sideman clearly indicates his ability to be fair and impartial. We simply cannot agree that he was unfit to serve. It is also significant that Mr. Sideman was properly admonished by the presiding judge to refrain from discussing the article with his fellow jurors.

■■ The question of whether a trial court abused its discretion in regard to a juror's improper contact with media reports prejudicial to a criminal defendant was before this district in *People v. Jones* (1978), 65 Ill. App. 3d 435, 382 N.E.2d 697. In *Jones*, we reviewed prior cases on this subject and highlighted factors which should be considered in this type of situation. The nature of the prejudicial statement must be closely examined and the source of the information is significant. Here, as in *Jones*, the prejudicial information concerned only other offenses and did not contain any references to evidence suppressed in the case on trial. Likewise, there was no indication that the prosecutor in either *Jones* or this case had any connection with the article's appearance. However, in *Jones*, the uncontradicted evidence was that the defendant had admitted the offense. Defendant Bassett, on the other hand, admitted only that he had hit a tree limb. But this distinguishable element is mitigated by the fact that the article in the instant case is much less inflammatory than that in *Jones*. Thus, we conclude that the trial court's denial of the motion for a mistrial was not an abuse of discretion.

(We note—parenthetically—that defendant's counsel participated in the *voir dire* examination. In fact, he did make limited inquiry of Mr. Sideman but asked no questions which resulted in the reflection of any prejudice.)

*Second*, the defendant claims that the trial court erred when it denied his motion *in limine* to prevent the introduction, for impeachment purposes, of his prior conviction for aggravated battery. He contends that this conviction had little probative value and that its possible introduction would have created the danger of substantial prejudice.

In Illinois, impeachment of a witness by evidence of conviction of a crime is admissible, but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment, unless, in either case, (3) the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698.

The defendant's brief presents a comprehensive argument for the proposition that the *Montgomery* standard should be modified to encompass Rule 609(a) of the Federal Rules of Evidence as it was

eventually enacted. This argument, however, was answered by the recent case of *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283. Our supreme court in *Yost* reaffirmed its position that the rule set out in *Montgomery* is the standard to be followed by Illinois courts.

Alternatively, the defendant contends that the trial court erred even under the *Montgomery* standard, arguing that since the trial court did not state its reasons for denying the defendant's motion *in limine*, it did not balance the probative value against the danger of unfair prejudice.

In *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276, the Illinois Supreme Court indicated, in *dicta*, that a specific evaluation in open court of each factor in this type of determination is unnecessary. The court said that it could be assumed that a trial court gave appropriate consideration to the relevant factors set out in *Montgomery*. The record in the defendant's case reveals that counsel presented the elements of the balancing test to the court. And the prosecutor stated that the issue was the effect of the prior conviction upon the witness' credibility. We find that the trial court gave no indication that it was not conducting the balancing test.

In *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 376 N.E.2d 425, we affirmed a trial court's decision to allow evidence of an involuntary manslaughter conviction in a burglary trial. We stated that evidence of convictions and felonies not directly related to dishonesty can still have some probative value for impeachment. The defendant's aggravated-battery conviction has probative value because it reveals his possible disrespect for social order. We find that, based upon *Washington* and *Guthrie*, no error occurred in the denial of the *in limine* motion.

*Finally*, the defendant claims that his sentence was excessive. He was sentenced to the maximum possible extended term of 6 years' imprisonment for reckless homicide, to be served consecutively with a sentence of 5 years' imprisonment for aggravated battery. The record is clear that the trial court considered both aggravating and mitigating factors in reaching its sentencing decision and properly exercised its sentencing discretion. No error.

Affirmed.

WEBBER and TRAPP, JJ., concur.